Simpson v. Erisner.

SIMPSON et al. v. ERISNER et. al., Appellants.

Division One, March 14, 1900.

1. **Will: ACTIVE TRUST: FEE.** The trustees under the will were given power to exercise a control over the real and personal property except the house and garden where the widow was to live, were charged with the duty of applying the rents to the support of the widow and the maintenace and education of the children, of making repairs, and were given discretion in the management of the estate and charged with the duty of protecting it until the death of the widow and until it was divided between certain legatees. *Held, first,* that the trust was an active trust, and although the use was not executed the fee vested in the trustees, and still remains in them, although they nine years ago resigned and no successors were appointed in their stead; *second,* the sale by the widow and surviving children, after their majority, did not entitle the grantee to the possession or divest the trustees, the duty yet remaining on them to control and rent the property and apply the rents to the support of the widow, although she may have ample support from other property or the proceeds of the personalty; *third,* one of the legatees having died his heirs (sisters of the half-blood) can not sue for possession of their share in the property during the life of the widow but the trustee (to be appointed) alone is entitled to possession.

2. ————: **RESIGNATION OF TRUSTEES.** When land is vested in trustees by an active trust, and they resign, the title still remains in them, and if the trust property is surrendered the *cestuis que trust* have authority to apply to the proper court for the appointment of a trustee, who alone has right to recover the possession in ejectment.

Appeal from Lincoln Circuit Court.—*Hon. E. M. Hughes,* Judge.

REVERSED.

*Norton, Avery & Young* for appellants.

The action of ejectment can only be maintained where the plaintiff had the legal title at the time the action was commenced. Ford v. French, 72 Mo. 250; Dunlap v. Henry, 76 Mo. 106. And since these cases have been universally followed since their enunciation by this court, we think it unnecessary to cite other cases.

*Martin & Woolfolk* for respondents.

(1)   The will does not give the trustees any power to sell the lands, but only authority to lease and collect the rents for the support of the widow and the support and education of his children until they became of age or should marry.   It does not give the executors the primary use of the land, but only a power to lease and collect the rents for the purposes mentioned.   "If a testator give his trustee simply a power of disposition of his estate, as that his executors or trustees or other persons shall let or mortgage or otherwise dispose of his estate to pay debts or legacies or debts or annuities or other charges or when he directs his executors to raise money, no estate vests in the trustees, executors or other persons, but it descends to the heir or other persons to whom it is directed to go in the will until it is wanted for the purposes named and then it is divested only to the extent necessary for the purposes named."   Perry on Trusts, secs. 304, 307, 308.   (2)   Rules of construction have been adopted by the courts in determining the right and estate of a trustee.   First.   Whenever a trust is created, a legal estate sufficient for the purposes of the trust shall, if possible,

be implied in the trustee.    Second.    Although a legal estate
may be limited to a trustee to the fullest extent as to him
and his heirs, yet it shall not be carried further than the
complete execution of the trust necessarily requires.    Perry
on Trusts, sec. 312.    The purposes of the trust, created in
J. H. Simpson's will, being the support of the widow, and
the support and education of his two children, have at least,
so far as the children are concerned, been fully completed
by the death of the little boy and the maturity and marriage
of the daughter Fannie.    As to the widow, the other prop-
erty of the estate is more than ample for her support, if after
her action in attempting to dispose of a part of the corpus
of the estate, she or anyone representing her would be per-
mitted to say that the trust has not been executed.    But
who is in this case saying that the trusts created by the will
of John H. Simpson have been unexecuted?    Not the trus-
tees or anyone for them or claiming under them.    Both of
them have been discharged almost ten years.    Mrs. Nelson
can not claim that the trust is unexecuted so far as she is
concerned.    She is married, and by the terms of the will
she is precluded from claiming a support from the estate.
Can Mrs. Simpson, the widow, set up the will as containing
a trust for her benefit to be executed out of the land in-
volved in this suit, after she has conveyed by warranty deed
the land itself and obtained not the annual rents, but as
appears from her deed, the full value of the land?    She will
not be permitted to say that the will contains a trust in her
favor to be executed out of the land in suit when she has
conveyed the land by warranty deed.    She would be estopped
from setting up the trust in the executors or any beneficial
interest in herself by her conduct.    Ketchum v. Christian,
128 Mo. 38; Fox v. Winders, 127 Mo. 502; Rosenberger
v. Jones, 118 Mo. 559; Tyler v. Hall, 106 Mo. 313.    And
estoppel may be invoked by the plaintiffs against a defend-
ant in ejectment in such a case as this.    Suddarth v. Robert-

son, 118 Mo. 286; Hardwick v. Jones, 65 Mo. 54; Wood v. Hilderbrand, 46 Mo. 284. (3) If defendants claim title from any other source, they must produce such other title. Smith v. Lindsay, 89 Mo. 76; Charles v. Patch, 87 Mo. 450; Grandy v. Casey, 93 Mo. 595; Butcher v. Rodgers, 60. Mo. 138; Miller v. Hardin, 64 Mo. 545; Finch v. Ullman, 105 Mo. 255; Ebersole v. Rankin, 102 Mo. 488. It being shown that both parties acquire and claim title from a common source, the defendants are estopped from setting up an outstanding title in the trustees. Cummings v. Powell, 97 Mo. 524; Fellows v. Wise, 49 Mo. 350; Holland v. Adair, 55 Mo. 40.

MARSHALL, J.—This is an action in ejectment to recover an undivided one-sixth interest in sixty-nine and fifty-three hundredths acres of land in Lincoln county.

John H. Simpson married a widow, who had two children, Belle Simpson and Camelia Woodson who are the plaintiffs in this action. There were born of that marriage two children, Fannie and Riley. Mr. Simpson died January 18, 1876, seized of the land in controversy, besides other real and personal property. By his will he devised all his property, real, personal and mixed, to John Hutton and John Cockrell (and also appointed them his executors) in trust for the following purposes: to have "full power and authority to lease, rent, manage and control all my real estate, and to manage and control and dispose of all my personal property as they may deem best for the interest of my estate," with power to sell the personal, but no power to sell the real property, and out of the rents and profits of the real estate and the proceeds of the personal, to provide, first, for the support and maintenance of his widow Leonora (with the right to her to occupy the dwelling house, garden and out houses), as long as she lived and remained single and unmarried; second, for the support, maintenance and education

of his two children, Fannie and Riley and his step-daughter
Belle Forbush (now Belle Simpson, wife of W. H. Simpson)
until they severally became of age or married; third, to
pay to his step-daughter, Belle, a special legacy of four hun-
dred dollars out of the personal property, one year after his
death, on condition that by so doing it would not jeopardize
the provisions made for the support of his wife and his two
children; and fourth, the whole estate, subject to the said
provisions to be divided equally between his two children
Fannie and Riley; with a further proviso, that if his widow
elected to renounce the will, the special legacy to his step-
daughter should thereupon cease and be void.

About fifteen months after his death Riley died intes-
tate, leaving as his heirs at law his mother Leonora, his full
sister Fannie (now intermarried with Joseph Nelson) and his
two half sisters, the plaintiffs.   On the 24th of December,
1894, the widow, Leonora, and the surviving child of the
testator, Fannie Nelson, conveyed this property, by war-
ranty deed, to the defendant James Erisner for a considera-
tion of $1,390, and he entered upon the possession thereof
and has ever since claimed it adversely to every one.   The
trustee Hutton resigned on the 5th of August, 1887, as did
also the trustee Cockrell on the 8th of July, 1878.   There-
upon the probate court appointed Josiah Creech, adminis-
trator *de bonis non*, with the will annexed, and he was still
acting as such at the time of the trial of this case.   On the
16th of February, 1897, the plaintiffs instituted this action
against Erisner to recover an undivided one-sixth interest in
the land, to which they became entitled as heirs of their half
brother, Riley Simpson, deceased.   Upon their motion, the
widow, Leonora, and the half-sister, Fannie Nelson, and her
husband, were made parties defendant.   The answers are
general denials.   No instructions were asked, given or re-
fused.   The circuit court entered judgment for the plain-
tiffs and defendants appealed.

## I.

Upon the faith of Sieferer v. St. Louis, 141 Mo. l. c. 592, the judgment of the circuit court might be affirmed because no declarations of law were asked or refused and hence this court is not advised as to the theory upon which the trial court proceeded, and because this court will not apply the law to the facts unless there is an agreed statement of facts, or the evidence is wholly documentary. But we are not content to rest the decision of this case upon that ground, for it would be a miscarriage of justice in this instance.

## II.

The sole ground relied on by the defendants in this court is that the plaintiffs were not seized of the legal title at the time this action was commenced, and Ford v. French, 72 Mo. 250 and Dunlap v. Henry, 76 Mo. 106, are cited and relied on to support the contention. The general proposition established by the cases cited, and many others, can not be denied.

The postulate of this contention is that the will vested the fee in the trustees so long as the widow lived and remained unmarried, and that the trustees can not destroy the trust estate by resignation, that none of the children were vested with a fee simple interest until the death of the widow which has not yet occurred, and hence these plaintiffs are not entitled to maintain this action, but that if ejectment is necessary, the proper remedy is to have a court of equity appoint successors to the trustees who resigned and they, being vested with the fee, will be charged with the duty of protecting the possession.

The plaintiffs' answer to this is that the will vested in the trustees only a simple power to manage the estate for the use of the widow and until the children became of age, but

the fee was all the time in the legatees (his children) subject
to this limitation of power in the trustees, and upon the
death of Riley the plaintiffs inherited one-sixth of the estate,
that is one-third of his one-half, and that as the widow and
the half sister had sold their undivided interests to the de-
fendant, Erisner, the plaintiffs are entitled to a judgment
for an undivided one-sixth, and that as the defendant is in
possession and claiming adversely to the whole world they
will be barred by limitation if they do not sue.

It is plain that if the will vested the fee in the trustees,
and if the trust is an active trust, it is the duty of the trustees
to protect the fee, and that if the trustees become barred by
limitation, the *cestuis que trust*, even though they be minors
or married women or insane persons, will also be barred.
[Walton v. Ketchum, 147 Mo. 1. c. 219; Schiffman v.
Schmidt, 154 Mo. 204.] And the fact that the trustees
resigned does not alter the principle, for it was always
in the power of the *cestuis que trust* to apply to a court of
equity and have proper trustees appointed.

It is equally plain that the will did not vest in the trus-
tees a simple power, for the language of the will is: "And for
the purpose of carrying out my will and disposing of my
property according to my desire, I hereby give and bequeath
to John Hutton and John Cockrell, both of said county and
state, all my property, real, personal and mixed, in trust
however for the purposes hereinafter mentioned." Then
follows the direction as to the support of his wife, his two
children and his step-daughter, Belle, and the specific legacy
to Belle, and then the will proceeds: "I desire that all my
property, real, personal and mixed remaining after provid-
ing for the comfort and support of my said wife according
to the above plan, limitations and conditions, and the support
maintenance and education of my children and step child, be
divided equally share and share alike between my two chil-
dren Fanny and Riley, and any other child or children that

may hereafter be born of my marriage with my said wife Leonora Simpson."

The will also required the trustees to lease, rent, manage and control the real property, to manage, control and dispose of the personal property as they deemed best, to keep the real property in repair and to make bi-annual settlements.

It is manifest that this use was not executed by the Statute of Uses, but that the case falls within the third rule of construction, to wit: "Where such powers or duties were imposed with the estate upon a donee to uses that it was necessary that he should continue to hold the legal title in order to perform his duty or execute the power." [1 Perry on Trusts (5 Ed.), sec. 300.] Speaking of this the learned author says: "The third rule of construction is less technical, and relates to special or active trusts, which were never within the purview of the statute. Therefore if an agency, duty, or power be imposed on the trustee, as by a limitation to a trustee and his heirs to pay the rents, or to convey the estate, *or if any control is to be exercised* or duty performed by the trustee in *applying the rents to a person's maintenance, or in making repairs,* or to preserve contingent remainders, or to raise a sum of money, or to dispose of the estate by sale—in all these cases, and in other or like cases, the operation of the statute is excluded, and the trusts or uses remain equitable estates. So if the trustee is to exercise any discretion in the management of the estate, in the investment of the proceeds or the principal, *or in the application of the income, or if the purpose of the trust is to protect the estate for a given time, or until the death of some one, or until division,* or until a request for a conveyance is made." [1 Perry on Trusts (5 Ed.), sec. 305.]

The trustees under the will were given power to exercise a control, were charged with the duty of applying the rents to the maintenance of the widow and children, of mak-

ing repairs, are given a discretion in the management of the estate, are charged with a duty as to the application of the income, and were charged with the duty of protecting the estate until a given time, until the death of the widow and until the estate was divided.   For all these reasons the trust was an active trust, and not a dry one, the use was not executed, but the fee vested in the trustees and still remains in them, and the children had only the right to support and maintenance until their majority or marriage (which has ceased by the happening of both contingencies) and have not yet become vested with the fee because the widow is still alive.   The will did not contemplate that all the rents and profits arising from the real estate and the proceeds of sale of the personal property would be necessary to support the widow and children, because it provided that whatever remained after satisfying these conditions should, with the real estate, be divided between his children.

The sale by the widow and Fannie to the defendant Erisner did not give him a right to the possession nor divest the title of the trustees.   It is as much the duty of the trustees to control and rent this property as it is any other property belonging to the trust estate, and to keep and apply such rents for the support of the widow, and after her death to divide the remainder among the children of the testator. The fact that the rents from other property or the proceeds of the sale of the personal property is sufficient to support the widow is wholly immaterial.   The rents from this land must be put into the same purse and applied and accounted for in the same manner with the other rents and proceeds.

The deed from the widow and Fannie conferred no present right to possession to any part of the property upon the defendant Erisner, as against the trustees.   They had no such right and could confer none upon him.   Upon the death of the widow he will be entitled to the part of the real property acquired from them.   But the same reasoning and

rule of law which makes the trustee (to be appointed) the only party entitled to sue for possession, also denies the defendants' right to possession until after the widow's death. Of course it follows that the trustee having the whole legal title must sue for the possession of the whole tract.

For these reasons the judgment of the circuit court is reversed. All concur, except *Robinson, J.*, absent.