STELLA SWOPE EURENGY ET AL. v. EQUITABLE REALTY CORPORATION, Appellant.—107 S. W. (2d) 68.

Division One, June 30, 1937.

*Charles W. German* and *George L. Walker* for appellant.

344

*Ryland, Stinson, May & Thompson, Lathrop, Crane, Reynolds, Sawyer & Mersereau, Wilson, Bundschu & Bailey, Horace F. Blackwell, Jr.,* and *J. G. Vineyard* for respondents.

*E. R. Morrison* for Equitable Realty Corporation.

PER CURIAM:—This is an action originally instituted for the recovery of $47,967.50 as rents under a lease and for $42,778.16 for taxes assessed against the demised premises for which, under the lease, defendant was obligated but had failed to pay and for the appointment of a receiver to collect the income from premises. The bill was later amended asking that the lease on such premises be canceled and that possession be delivered to the owners. The decree of the chancellor below was for plaintiffs and the named defendant has appealed. The motion to dismiss this appeal filed here by the receiver as *amicus curiae* is hereby dismissed and we will consider the appeal on the merits.

On December 2, 1921, the then six owners of undivided interests in two lots situated at the northeast corner of Twelfth and Walnut Streets in Kansas City leased said premises for a period of 107 years, 8 months which lease was assigned on January 1, 1930, to Albert Schoenberg. He, on May 31, 1930, placed a deed of trust on the leasehold estate to secure the payment of $300,000 evidenced by

a number of promissory notes, with Armwell L. Cooper, as trustee, who is joined as a defendant. Thereafter on October 1, 1931, Schoenberg assigned the lease to the Equitable Realty Corporation, the appellant, which took possession of the property under the lease.

Margaret Miller, one of the lessors, in 1928 conveyed in trust an undivided interest in the premises. The Fidelity National Bank & Trust Company of Kansas City, which we will refer to as Trust Company, succeeded to the trust. It refused to join as a·party plaintiff so has been joined as a party defendant.

On January 9, 1934, the then owners of the fee served notice on appellant of their intention to forfeit the lease at the end of ninety days because of its defaults in payment of rents and taxes.

On January 31, 1934, the plaintiff filed suit and on the same day a receiver was appointed.

On November 24, 1934, a decree was entered in favor of plaintiffs holding that the lessee had failed to remedy the defaults specified in the notice and that the lease was terminated by the owners of the property; that plaintiffs and the defendant Trust Company, as trustee, were all the owners of the property and were entitled to immediate possession of the premises; that because of the termination of the lease Cooper, as trustee, and the beneficiaries of that trust deed had no interest in the demised premises; that plaintiffs recover from appellant $33,697.50 for unpaid rent and $41,278.16 for unpaid taxes aggregating $81,875.66. The decree further found that defendant Equitable Realty Corporation had no assets other than the lease; that the lease was then of no value; that said defendant was wholly insolvent; that the rents from the subtenants were not sufficient to meet the rent of $4,500 per month reserved by lessors and the other obligations of lessee imposed by the lease.

Plaintiff Eurengy in 1929 and plaintiff Featherstone in 1930 had subjected their undivided interests in the demised premises to deeds of trust as security for debts therein described. Neither the trustees in these two deeds of trust nor the beneficiaries thereunder were joined as parties nor were the beneficiaries under the conveyance in trust by Miller to the Trust Company.

■ Appellant contends that all these trustees and beneficiaries were necessary and indispensable parties and that therefore the suit must fail because the failure to join them caused a defect of parties. As this point was not raised by demurrer or answer below, it was waived and cannot now on appeal be raised for the first time. [Sec. 774, R. S. 1929; Egan v. Woelfel, 323 Mo. 27, 18 S. W. (2d) 50; Wolf v. Shulz Folding Box Co. (Mo. App.), 44 S. W. (2d) 866.]

■ Appellant next contends that as the notice of lessors' intention to forfeit the lease was not signed by these trustees and beneficiaries it was invalid. The notice was signed by all the plaintiffs

and by defendant Trust Company. That they were all the owners of the property was admitted by appellant in its answer and found by the chancellor in his decree. Appellant's theory is that all who derive any interest from the lessors in the demised property must join in the election to forfeit the lease. In support of its contention appellant cites cases holding that a contract of lease is indivisible and that the same cannot be canceled or forfeited unless all of the co-owners join in such action as otherwise the lessee would be bound by the lease as to a part of the co-owners and discharged as to a part of the co-owners. With this principle we agree but as the trustees and beneficiaries of the Eurengy and Featherstone deeds of trust and the beneficiaries of the Miller deed of trust cannot be regarded as co-owners, the same is not applicable here. Their interests in the property were not such as would require their joining in the option to forfeit the lease.

In this State a mortgage or deed of trust conveys no estate in the land but merely creates and evidences a lien thereon to secure the debt. Until the mortgagor defaults and the mortgagee forecloses or takes possession the mortgagor continues as the owner of the estate and has a right to lease, sell and in every respect deal with the mortgaged premises as owner. [Kennett v. Plummer, 28 Mo. 142; City of Springfield ex rel. Southern Missouri Trust Co. v. Ransdell, 305 Mo. 43, 264 S. W. 771; Hunter v. Henry (Mo. App.), 181 S. W. 597.] Or, to otherwise express the rule, a mortgage or deed of trust on real estate is merely a security for the debt. As long as the mortgagor is in possession he may sell or may lease the premises and collect the rents and proceeds and is entitled to sue for and recover all damages resulting from the injuries inflicted upon or from any interference with his possession. As to all parties save and except the mortgagee, these rights and remedies belong to the mortgagor to the same extent after as before the mortgage was executed. As to all the world except the mortgagee, the mortgagor continues the real owner. [Pence v. Gabbert's Admr., 70 Mo. App. 201.] There is no privity of either estate or contract between the mortgagee and the lessee of the mortgagor. [Roosevelt Hotel Corp. v. Williams, 227 Mo. App. 1063, 56 S. W. (2d) 801.] And in actions by a mortgagor for trespass or injuries to the property strangers cannot interpose the mortgage as an obstacle or defense. [Matthews v. Mo. Pac. Railroad Co., 142 Mo. 645, 44 S. W. 802; King v. Sligo Furnace Co. (Mo. App.), 190 S. W. 368.] However, under the Miller trust deed a different situation arose. This deed is not a mortgage deed of trust and therefore is not a mere security for a debt. Here the trust is express and active and in addition by the terms of the instrument the trustee, who did sign the notice, was vested with the full legal title to and may be regarded as an owner of an undivided

interest in the demised premises. Here the trustee was in possession. There was no reservation of power in the grantors or in any beneficiary. The trustee could have brought suit if necessary in his own name. [Sec. 699, R. S. 1929.] It was the trustee's duty to protect the property for the benefit of the *cestuis que trustent*. [Schiffman v. Schmidt, 154 Mo. 204, 55 S. W. 451.] They could not maintain an action at law in relation to the trust property against third parties. [Morrow v. Morrow, 113 Mo. App. 444, 87 S. W. 590; 65 C. J., sec. 743.] The beneficiaries under this trust deed were neither proper nor necessary parties to the notice.

But, says appellant, the trustee had no power under the terms of the trust deed to join in a movement to forfeit the lease. By the express terms of the trust deed the trustee had power to collect all income, to sell the property and "to join with other owners of the property in making new leases in case the present lease shall become in default or be declared void." It cannot be doubted that from the powers conferred which contemplate the forfeiture of the lease that the power to join in such forfeiture may be readily implied. The contention of the appellant that the notice was defective in such respects is without substance and must be ruled against it.

Appellant claims that the notice of intention to terminate the lease neither conformed to the terms and provisions of the lease nor to the requirements of law.

The lease has this provision as to notice: ". . . that before declaring any such forfeiture, and terminating the term thereby created, the lessors shall give to the lessee ninety days' written notice of the lessors' intention to declare such forfeiture and terminate the lease; and the lessors shall set out in said notice the matters complained of and which are in default under the terms of the lease and shall declare the lessors' intention to reenter the premises and declare such lease forfeited if such breach be continued. Said notice shall be served in the manner hereinafter provided and at and after the expiration of the ninety days' notice aforesaid, this lease shall cease and terminate and be void at the lessors' option provided the lessee is then in default respecting such covenants and agreements."

The notice was dated as of the 16th day of August, 1933, and was acknowledged by the signors on various dates thereafter up to January 8, 1934. It was served on appellant January 9, 1934, and a copy sent by registered mail to Cooper, trustee, on January 10, 1934. The defaults recited in the notice were:

"1. Lessee has failed to pay the rent stipulated for in said lease at the times therein agreed upon in that rent in the sum of $39,976.29 to and including the month of May, 1933, is now unpaid, past due and delinquent and lessee has failed to pay the same; and

"2. Lessee has failed to pay taxes and assessments required to

be paid by lessee, as provided in said lease, at the time the same became regularly due and payable, in that State, county and school taxes for the year 1931 in the sum of $7,623.12 and for the year 1932 in the sum of $8,413.90 and for the year 1932 in the sum of $3,436.21 are now past due, delinquent and in default and lessee has failed to pay the same.''

Appellant says that the notice in stating that the rent up to and including May, 1933, was unpaid was not a true picture of the situation on August 16, 1933, the date of the notice, or on January 9, 1934, the date of the service of the notice, and that therefore the notice was so indefinite and uncertain as to leave lessee in doubt as to what was intended and for that reason it did not comply with the terms of the lease.

In May, 1932, the rents had been assigned to Cooper, trustee who was, first, to pay the operating expenses of the building and premises, and, second, to pay to the lessors $3,000 per month to apply toward the rent which was reserved in the amount of $4,500 per month. The evidence does not set out separably the exact amounts of rent due lessors to May 31, 1933, or on August 16, 1933, or on January 9, 1934. The chancellor found the lessee in default. There is no contention by lessee that it ever entirely remedied its default incurred up to May 31, 1933. The strict requirements surrounding a demand for payment under the Landlord and Tenant Act which appellant urges should be applied here are not applicable to this notice. The act requires the amount actually due to be stated in the demand, for the reason that the tenant may avoid a suit by paying the demand or, after the suit, may retain possession of the premises by paying the demand and costs. Thus, if a greater amount is demanded than is due the tenant cannot avoid the suit without paying the amount claimed. [Bald v. E. & J. Auto Painting Co. (Mo. App.), 18 S. W. (2d) 902.] The purpose of the notice here is different. It is well settled that the breach of a covenant to pay rent does not subject the lessee to forfeiture of his estate and possession unless the lease contains an express proviso to that effect. And, as it was optional with the lessors under the terms of the lease, to declare a forfeiture, the notice was required in order to advise the lessee of lessors' intention so to do and to specify the covenants in default so as to give the lessee an opportunity to remedy its defaults in full before the right of forfeiture was enforced. In this case the notice does not fulfill the same office of a demand under the Landlord and Tenant Act and was sufficient to advise lessee of the covenants in default. Even if the appellant's objection to this specification in the notice was good it would be of no avail as appellant was also in default in payment of taxes which alone furnished a proper cause for forfeiture.

■ But appellant says that the specification of the notice as to taxes was also fatally defective in that it did not specify all the taxes that were due as of the date of the notice. Appellant admits that there were additional taxes then due which were not specified and that more taxes accrued, none of which were paid, up to the time of the service of the notice. Appellant cannot complain of a demand to pay less than was due. [Mooers v. Martin, 23 Mo. App. 654.] There is no claim that it paid even the amount of the delinquent taxes stated in the notice.

■ Appellant next claims that the rents collected after the service of the notice should have been applied to the payment of taxes because the respondents in their petition state: "That said taxes and the obligation of said lessee to pay said taxes constitutes a charge and lien upon the rents in the hands of the lessee and upon moneys heretofore collected as rents upon the demised premises." Had this been done appellant asserts it would not have been in default on that score. However, the lease does not provide for such a lien and no evidence was adduced in support of that allegation of the petition and it was abandoned. The agreement of lessee was that it should pay the taxes. There was no duty on the part of the respondents to apply such rents as were paid them to the payment of the delinquent taxes. [Metropolitan Land Co. v. Manning, 98 Mo. App. 248, 71 S. W. 696.] Furthermore, as lessee did not direct that the payments should be applied to the delinquent taxes the plaintiffs were entitled to apply the same to any claim they had against lessee. "The rule ordinarily recognized in this country, that, if a debtor in making a payment fails to state to which one or more claims the payment shall be applied, the creditor may make such application as he may please, applies in connection with claims for rent as in other cases." [2 Tiffany, Landlord and Tenant, p. 1092.]

■ Appellant further claims that no notices were sent to the holders of the notes under the deed of trust imposed or the leasehold estate in which Cooper is trustee.

The lease provides that lessee may mortgage or encumber his leasehold estate and "if the name and address of the holder of any debt and the amount of the same secured by mortgage or deed of trust on the estate of lessee herein is shown by the instrument of record in the office of the recorder of deeds . . . then copies of all written demands and notices provided for by this lease shall be mailed by registered United States mail, postage prepaid, to the last known address of such mortgagee or *cestui que* trust. . . ."

Appellant admits the notes secured by this deed of trust were bearer notes and the names and addresses of the holders did not appear of record but contends that as the notes were payable at the

Commerce Trust Company in Kansas City, Missouri, the inference was that the notes were to be found in that institution and it should have been given notice. With this we cannot agree. Furthermore, the trust instrument expressly appointed Cooper, the trustee, as agent to receive notices of default under the lease pursuant to a further provision of the lease providing that if a mortgagee or beneficiary under any deed of trust affecting the leasehold estate should be more than one individual or corporation, then they should appoint a single agent in Kansas City, Missouri, for the purpose of receiving notices. Respondents served the notice on the trustee and did thereby all that was required to do under the terms of the lease in respect of their duty to the noteholders under this deed of trust.

By the acceptance of rent after May 31, 1933, and after August 16, 1933, and after January 9, 1934, appellant claims that respondents waived their right to forfeit the lease. It is true that the acceptance of rent after a breach for which forfeiture might then have been declared is a waiver of a right to forfeit, but such acceptance must be after the right of forfeiture has been fixed. [Garnhart v. Finney, 40 Mo. 449; Mansur v. Chamberlin, 162 Mo. App. 155, 144 S. W. 510.] The right of respondents to forfeit the lease did not accrue until the expiration of ninety days after January 9, 1934, the time of the service of the notice. Acceptance of rent by them at any time prior to that date did not constitute a waiver.

In Lindeke v. Associates Realty Co. (C. C. A. 8th), 146 Fed. 630, a landlord gave four months' notice of intent to forfeit on August 1, 1905. Rentals were accepted after the notice was given but before December 1, 1905, when the right to forfeit matured. In holding that there was no waiver the court said: ''Under the requirements of the four months' notice, the right to re-enter accrued December 1, 1905. No rent was paid beyond October 1, 1905. We understand the rule of law to be that a waiver in such instance applies where the rent has accrued and been accepted after the right of re-entry has attached on account of forfeiture; and not where it is paid and accepted as due for a period prior thereto.'' Here the appellant makes no claim that it paid any rent after the right of forfeiture became fixed. We rule that there was no waiver.

Appellant finally claims that the chancellor has no jurisdiction in this case because in 1928 a petition in partition was filed in the Circuit Court of Jackson County by one of the plaintiffs herein against the other owners of the property asking that the same property covered by the lease be partitioned and that therefore the property is now under the jurisdiction of the court exclusively for the purpose of that petition. That suit has never been tried but is still pending. As authority for its claim appellant cites the case of Dildine v. De Hart, 293 Mo. 393, 239 S. W. 112, which held that

where a partition suit had been filed in the circuit court that court acquired jurisdiction of the res and a probate court could not at a later time take away the jurisdiction of the res and deprive the plaintiffs of their valuable privilege to have the property partitioned by the circuit court. That ruling has no application here. This action in no way prevents the parties from proceeding with their partition suit nor interferes with the jurisdiction of the court in that suit over the res. Nor can it be said that the pendency of a partition suit suspends the right of the owners all acting together to defend against strangers their interests in the property involved.

No reversible error appearing in the assignments urged we hold that the decree should be affirmed. It is so ordered.